PEOPLE v McMULLAN

Docket No. 281844. Submitted March 11, 2009, at Detroit. Decided June 2, 2009, at 9:00 a.m.

A jury in the Genesee Circuit Court, Geoffrey L. Neithercut, J., convicted Angelo R. McMullan of second-degree murder, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err by refusing the defendant's request for a jury instruction on involuntary manslaughter. Involuntary manslaughter is a necessarily included lesser offense of murder. If a defendant is charged with murder, the trial court should instruct the jury on involuntary manslaughter only if the instruction is supported by a rational view of the evidence. Murder is a homicide committed with malice, and involuntary manslaughter is the unintentional killing of another committed with a lesser *mens rea* of gross negligence or an intent to injure. Malice is the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. Malice can also be inferred from the use of a deadly weapon. The facts in this case support a finding of malice and preclude a finding of involuntary manslaughter. The defendant fought with the victim, repeatedly asked his wife to give him his loaded gun and took it from her when she refused, went after the victim after the victim retreated to his car, trapped the victim in the victim's car, then pointed and fired a gun at the victim's chest at close range.

2. The defendant's trial counsel did not deprive the defendant of effective assistance of counsel by failing to anticipate that a prosecution witness would receive a favorable plea agreement in exchange for his testimony and by failing to cross-examine the witness accordingly. The other evidence against the defendant was overwhelming and the defendant could have been convicted on the basis of his testimony alone.

3. The defendant cannot establish prosecutorial misconduct based on the prosecution's failure to disclose its witness's plea

agreement. A prosecutor has a duty to disclose the details of a witness's plea agreement, immunity agreement, or other agreement in exchange for testimony. MCR 6.201(B)(5). Pursuant to *Brady v Maryland*, 373 US 83 (1963), the prosecutor must disclose any information that would materially affect the credibility of prosecution witnesses. To establish a *Brady* violation, a defendant must prove that the state possessed evidence favorable to the defendant, that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence, that the prosecution suppressed the favorable evidence, and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. In this case, the defendant cannot meet the last requirement in light of the overwhelming evidence against him when the testimony of the witness with the plea agreement is disregarded.

Affirmed.

BANDSTRA, J., concurring in part and dissenting in part, agreed with the majority except for its conclusion that the trial court properly refused to instruct the jury on involuntary manslaughter. The evidence was sufficient to allow a rational fact-finder to conclude that the defendant had committed the homicide with a lesser *mens rea* of gross negligence or an intent to injure and without malice. The fact-finder also could have concluded that the defendant's drug-induced intoxication was sufficient to rob his act of the necessary elements of murder. The case should be remanded for a new trial by a properly instructed jury.

1. HOMICIDE — MURDER — LESSER-INCLUDED OFFENSES — INVOLUNTARY MAN-SLAUGHTER — JURY INSTRUCTIONS.

Involuntary manslaughter is a necessarily included lesser offense of murder, but a defendant charged with murder is entitled to a jury instruction on involuntary manslaughter only if a rational view of the evidence supports such an instruction.

2. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A criminal defendant, in order to demonstrate ineffective assistance of counsel, must show that counsel's performance fell below an objective standard of reasonableness and that the performance so prejudiced the defendant as to deprive the defendant of a fair trial; prejudice exists if the defendant shows a reasonable probability that the outcome would have been different but for counsel's errors.

3. CRIMINAL LAW — TRIALS — WITNESSES — PROSECUTION WITNESSES — DUTY OF PROSECUTION TO DISCLOSE EVIDENCE.

> The prosecution must disclose any information that would materially affect the credibility of its witnesses; to establish a violation of this duty to disclose, a defendant must prove that the state possessed evidence favorable to the defendant, that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence, that the prosecution suppressed the favorable evidence, and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *David S. Leyton*, Prosecuting Attorney, *Donald A. Kuebler*, Chief, Research, Training, and Appeals, and *Vikki Bayeh Haley*, Assistant Prosecuting Attorney, for the people.

*Patrick K. Ehlmann* for the defendant.

Before: SAAD, C.J., and BANDSTRA and HOEKSTRA, JJ.

SAAD, C.J. A jury convicted defendant of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 30 to 75 years in prison for the second-degree murder conviction, 5 to 15 years in prison for the felon in possession of a firearm conviction, and two years in prison for the felony-firearm conviction. Defendant appeals and, for the reasons set forth below, we affirm.[1]

---

[1] Although defendant initially failed to file a timely claim of appeal, the United States District Court for the Eastern District of Michigan granted habeas relief to defendant and ordered the state of Michigan to reinstate his appeal as of right in this Court. *McMullan v Jones,* unpublished

### I. JURY INSTRUCTION

Defendant claims the trial court erred when it refused to give the jury an involuntary manslaughter instruction. This Court reviews de novo questions of law arising from jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). To warrant reversal of a conviction, the defendant must show that it is more probable than not that the failure to give the requested instruction undermined the reliability of the verdict. *People v Lowery*, 258 Mich App 167, 172-173; 673 NW2d 107 (2003).

A homicide committed with malice is murder. *People v Mendoza*, 468 Mich 527, 534-536; 664 NW2d 685 (2003). In contrast, the unintentional killing of another, " 'committed with a lesser mens rea of gross negligence or an intent to injure, and not malice,' " is common-law involuntary manslaughter. *Gillis, supra* at 138, quoting *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004). Common-law involuntary manslaughter is a necessarily included lesser offense of murder. *Mendoza, supra* at 540-542. If a defendant is charged with murder, the trial court should instruct the jury on common-law involuntary manslaughter, but only if the instruction is supported by a rational view of the evidence. *Id.* at 541. Unlike the dissent, we do not believe that a rational view of the evidence in this case supports an instruction for involuntary manslaughter.

Here, were we to agree that one of the bases for the trial court's refusal to give the instruction was incorrect —that defendant committed a felony by stealing the victim's money after the shooting—a rational view of the evidence nonetheless would not support an instruc-

opinion and order of the United States District Court for the Eastern District of Michigan, entered August 30, 2006 (Docket No. 05-70807-DT), slip op at 11.

tion for involuntary manslaughter. To find involuntary manslaughter, a defendant must not act with malice. *Gillis, supra* at 138. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke,* 457 Mich 442, 464; 579 NW2d 868 (1998). "[M]alice is implied when the circumstances attending the killing demonstrate an abandoned and malignant heart . . . ." *Id.* at 467. It can also "be inferred from the use of a deadly weapon." *People v Bulls,* 262 Mich App 618, 627; 687 NW2d 159 (2004).

Here, the evidence supports a finding of malice and not a lesser *mens rea* of gross negligence, as defendant claims. Defendant was angry at the victim over payment for a cocaine deal and had a fistfight in an apartment complex parking lot. The fight ended and the victim got into his station wagon. Defendant then repeatedly demanded that his wife give him his loaded revolver. When defendant's wife refused to give him the gun, defendant grabbed it from her and returned to and escalated the altercation with the victim. He approached the victim's car and pushed the door to prevent the victim from getting out of his vehicle. After the victim fell back into his seat, defendant pointed the gun at the victim, within one foot of his chest. Defendant cocked back the hammer of the revolver, which was the only way the gun could fire. Then, defendant pulled the trigger, shooting the victim at close range in his chest. Thereafter, defendant rifled through the critically injured victim's pockets and took his money. These facts support a finding of malice and preclude a finding of involuntary manslaughter.

The only evidence suggesting that defendant did not commit this homicide with malice is his own testimony

that he did not intend to kill the victim, that he assisted in taking the victim to the hospital, and that he displayed remorse. This does not constitute the kind of substantial evidence necessary to support a lesser offense instruction, *People v Silver*, 466 Mich 386, 393; 646 NW2d 150 (2002), and the facts certainly do not "rationally fit within the legal purview of manslaughter . . . ." *Holtschlag, supra* at 16 n 8.[2] Again, in light of evidence that defendant demanded a loaded weapon from his wife after the physical altercation concluded, returned to the victim and maintained a dominant position over him by physically forcing the victim back into the vehicle, pointed the gun close to the victim's chest, cocked the hammer, pulled the trigger, and stole the victim's money, no rational jury could conclude that defendant acted without malice. Defendant's alleged display of remorse does not alter this conclusion. Once defendant saw the gruesome result of his act, he may have regretted his conduct, but this does not alter the fact that his actions denote malice. To rule otherwise opens the door to ex post facto rationalizations of cold-blooded murder, like the one defendant committed here. The trial court correctly refused to give the jury an instruction on involuntary manslaughter.

## II. ASSISTANCE OF COUNSEL

Defendant contends that his attorney was ineffective because he did not know that one of the prosecution witnesses, Gregory McDowell, may have received le-

---

[2] We acknowledge that defendant claims not to remember cocking the hammer or pulling the trigger and that he denies searching the victim's pockets for money, but the gun could not have discharged without the deliberate act of pulling back the hammer and he acknowledged that firing a revolver at a person's chest is likely to cause serious injury or death. Moreover, a witness testified that defendant indeed searched the victim's pockets immediately after shooting him.

nience in anticipation of his testimony against defendant and counsel failed to cross-examine McDowell about his plea agreement.

The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *Id.* The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* at 484-485. Effective assistance is strongly presumed, and the reviewing court should not evaluate an attorney's decision with the benefit of hindsight. *Id.* at 485; *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). To demonstrate ineffective assistance, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the performance so prejudiced him that he was deprived of a fair trial. *Grant, supra* at 485-486. Prejudice exists if a defendant shows a reasonable probability that the outcome would have been different but for the attorney's errors. *Id.* at 486.

There is no evidence that, at the time McDowell testified, a plea agreement existed. McDowell had been charged with possession of cocaine, but did not enter a guilty plea until two days later. Defense counsel's performance cannot fall below an objective standard of reasonableness for failing to cross-examine the witness regarding a nonexistent agreement.

Defendant also claims that defense counsel should have anticipated McDowell's plea agreement because (1) McDowell testified for the prosecution, but was also facing charges, and (2) McDowell was granted supervised release

even though he failed to appear at his arraignment. Were we to agree, counsel's performance would not have so prejudiced defendant that he was deprived of a fair trial. *Grant, supra* at 485-486. McDowell's testimony was the same as defendant's except with regard to whether defendant searched the victim's pockets after the shooting. Given the evidence relating to the actual shooting of the victim, there was clearly overwhelming evidence to convict defendant of second-degree murder on the basis of defendant's testimony alone.

The elements of second-degree murder are: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). The victim died as a result of a gunshot fired by defendant. Defendant admitted the fistfight and explained that the victim's failure to pay for the cocaine would have disrupted defendant's ability to support his drug habit.

Notwithstanding that the evidence clearly supports a conviction of second-degree murder, defendant claims that, absent McDowell's testimony regarding the search of the victim's pockets, the jury would have been more likely to convict defendant of voluntary manslaughter. The elements of voluntary manslaughter are: "(1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions." *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Time lapsed after the fistfight stopped and the victim retreated to his car. Meanwhile, defendant repeatedly asked his wife to give him the revolver and she refused. Thereafter, defendant approached his wife and

"snatched" the revolver from her. Given this lapse of time, during which a reasonable person could have controlled his passions, the jury could not have found defendant guilty of voluntary manslaughter beyond a reasonable doubt. Thus, defendant fails to show a reasonable probability that the outcome would have been different but for the defense counsel's failure to anticipate McDowell's plea agreement and to cross-examine McDowell accordingly. *Grant, supra* at 486.

### III. PROSECUTORIAL MISCONDUCT

Defendant also asserts that if his ineffective assistance of counsel claim fails, the prosecutor engaged in misconduct by failing to disclose McDowell's plea agreement.[3]

Under MCR 6.201(B)(5), a prosecutor has a duty to disclose the details of a witness's plea agreement, immunity agreement, or other agreement in exchange for testimony. Similarly, pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the prosecutor must disclose any information that would materially affect the credibility of his witnesses. See *People v Lester*, 232 Mich App 262, 281; 591 NW2d 267 (1998). To establish a *Brady* violation, a defendant must prove

> (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*Id.* at 281-282.]

Were we to decide that the prosecutor should have

---

[3] This Court reviews preserved claims of prosecutorial misconduct de novo to determine if the defendant was denied a fair or impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

disclosed information about McDowell's anticipated plea agreement, defendant would fail to satisfy the fourth prong of the *Brady* test. Defendant has not shown that a reasonable probability exists that the outcome of the proceedings would have been different had the prosecutor disclosed evidence of a plea agreement or expectations for lenience in anticipation of an agreement. *Lester, supra* at 282. Again, regardless of McDowell's testimony, there was substantial evidence for the jury to have rejected a voluntary manslaughter instruction and convict defendant of second-degree murder. Furthermore, "a new trial is generally not required where the testimony of the witness is corroborated by other testimony or where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Lester, supra* at 283. Evidence of the plea agreement or expectations for lenience would only have served as an additional basis to impeach McDowell, who had already been impeached by discrepancies between his preliminary examination testimony and his trial testimony. In light of defendant's failure to prove this element of the *Brady* test, we need not remand for an evidentiary hearing to address whether the prosecutor fulfilled his duty to disclose.

Affirmed.

HOEKSTRA, J., concurred.

BANDSTRA, J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's conclusion that the trial court did not err by failing to provide the jury the requested instruction on involuntary manslaughter as a necessarily included lesser offense. In all other respects, I concur with the majority opinion.

The Supreme Court most recently and comprehensively articulated our standard of review in *People v Silver*, 466 Mich 386; 646 NW2d 150 (2002). "[T]he failure to instruct the jury regarding . . . a necessarily lesser included offense is error requiring reversal . . . if, after reviewing the entire cause, the reviewing court is satisfied that the evidence presented at trial 'clearly' supported the lesser included instruction," *id.* at 388, meaning that there was "substantial evidence to support the requested lesser instruction" at trial. *Id.* at 388 n 2.

Reviewing the "entire cause," I begin by noting that the trial court erred by considering the request for the instruction on involuntary manslaughter under *People v Ryczek*, 224 Mich 106; 194 NW 609 (1923). The trial court relied on *Ryczek*'s description of the elements of involuntary manslaughter and concluded that, under the facts of this case, those elements could not be satisfied. However, as explained in *People v Holtschlag*, 471 Mich 1, 11; 684 NW2d 730 (2004), "*Ryczek*'s description of involuntary manslaughter was never meant to define the *elements* of the crime of manslaughter." (Emphasis in original.) Most notably, the trial court here concluded that *Ryczek* prohibited an involuntary manslaughter instruction because the victim was killed in the context of a felony.[1] *Holtschlag* reasoned that, at least since *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980), whether "a 'felony' has been committed is simply not dispositive in determining whether either 'murder' or 'manslaughter' has been committed and, thus, the 'felony' language in *Ryczek*'s manslaughter description is essentially irrelevant." *Holtschlag, supra* at 10.

---

[1] The felony was defendant's alleged taking of money from the victim's pockets following the shooting. However, even if the *Ryczek* rule that a killing in the context of a felony could not be involuntary manslaughter was still good law, the jury might nonetheless have properly found defendant guilty of involuntary manslaughter if it believed his account that he did not take money from the victim.

The crucial difference between second-degree murder (of which defendant was convicted) and involuntary manslaughter (concerning which the requested instruction was denied) is the presence or absence of malice. "[T]he only element distinguishing murder from manslaughter is malice. . . . [T]he elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003).

"Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). In contrast, the killing of another, "committed with a lesser mens rea of gross negligence or an intent to injure, and not malice . . . is not murder, but only involuntary manslaughter." *Holtschlag, supra* at 21-22. In other words, conviction of involuntary manslaughter rather than murder is appropriate in such a "lesser mens rea" case because "the offender's mental state is not sufficiently culpable to reach the traditional malice requirements." *Mendoza, supra* at 541 (quotation marks and citation omitted).

Reviewing the evidence presented at trial, I conclude that no reasonable fact-finder could find that defendant did not shoot and kill the victim. However, the crucial question that remained was his state of mind in doing so.[2] There was ample evidence in the record from which a reasonable fact-finder could have concluded that defen-

---

[2] To the extent the trial court considered the malice question at all, it merely concluded, "Well, here, we know they're in a fight situation. Where there's a fight, there's malice." While the fact of the altercation between defendant and the victim is relevant in determining defendant's state of mind at the time he brandished the gun, it does not necessarily establish malice in that regard.

dant acted without malice. He and the victim, Jimmy
Smith, had been longtime associates, using and selling
controlled substances together for 30 years. On the
evening of the altercation that resulted in Smith's death,
he and defendant were arguing about a previous transac-
tion in which Smith claimed that defendant had supplied
him with fake Vicodin pills. Smith claimed that, as a result
and in compensation for that, Smith should not be re-
quired to pay for cocaine that defendant had supplied to
him, a proposition with which defendant vociferously
disagreed. The resulting fistfight did not settle the matter
as Smith still refused to give defendant the money he
thought he was owed for the cocaine.

Defendant testified that he wanted to scare Smith
into giving him the money, by threatening him with a
gun. He testified that, at the time, he had ingested rock
cocaine and that this made him feel like "a big man."
Further, he testified that, earlier in the day, he had
taken a dose of methadone, which he claimed provided
a "high." A witness, Gregory McDowell, testified that
he considered defendant to be under the influence of
controlled substances because he fidgeted and paced.
Further, the director of a methadone treatment center
confirmed that defendant was in treatment at the time
of the shooting. Defendant testified that he did not
intend to shoot Smith and that he could not recall
cocking the hammer or pulling the trigger to do so. He
claimed that the gun merely "went off."

Following the shooting, the record shows that defen-
dant took steps to assist Smith. Together with William
Henry Russell, Jr., defendant laid Smith on the rear
passenger seat of a car and took him to the emergency
room entrance of a hospital. Russell testified that defen-
dant had tears in his eyes at the time.

Notwithstanding all of this, a rational fact-finder could certainly have disbelieved defendant with respect to his intent and state of mind and concluded that the malice necessary to support a second-degree murder conviction existed at the time the gun was fired. That would be the proper analysis if defendant claimed that there was insufficient evidence to support the conclusion that he was guilty of second-degree murder. As the majority points out, for example, malice can be inferred simply from the use of a deadly weapon such as occurred here and a challenge to the second-degree murder conviction would properly be rejected. There was ample evidence to conclude that defendant acted with malice.

However, considering the argument defendant actually raises, I conclude that the evidence here was sufficient to allow a rational fact-finder to conclude otherwise, i.e., that defendant acted with a "lesser mens rea" and that his "mental state [was] not sufficiently culpable to reach the traditional malice requirements." *Holtschlag, supra* at 21-22; *Mendoza, supra* at 541 (quotation marks and citation omitted). Malice may be inferred from the use of a deadly weapon, but it does not have to be. A rational fact-finder could have believed defendant when he said that he did not intend to fire the weapon he was using merely to scare Smith, i.e., that he did not intend to do the act (firing the weapon) that caused Smith's death. That conclusion would be consistent with the long history defendant had with Smith, his attempts to help Smith following the shooting, his apparent grief at what had occurred and especially his corroborated accounts of being under the influence of drugs at the time the shooting occurred. As was the case with the defendant's "intoxication" in *People v Droste*, 160 Mich 66, 78-79; 125 NW 87 (1910), the fact-finder here might have concluded that, "at the moment" the gun discharged, defendant's drug use was

sufficient "to rob his act of the necessary elements of murder." While *Droste* is an ancient precedent, its conclusion in this regard was recently cited with approval in *Mendoza, supra* at 542-543. This is not to say, of course, that the jury would have found a lack of malice; it is merely to say that, given the record, it could have. By failing to instruct the jury on involuntary manslaughter and thus precluding that possible outcome, the trial court erred.

I reject the prosecutor's arguments that any error in this regard was without prejudice to defendant. The prosecutor argues that "defendant fails to show plain error affecting his substantial rights" because "the trial court instructed the jury on the lesser offense of voluntary manslaughter." Apparently, the argument is that, because the fact-finder did not find defendant guilty of voluntary manslaughter, it would necessarily have also rejected involuntary manslaughter if it had been instructed to consider it. That argument overlooks the fact that voluntary manslaughter and involuntary manslaughter are different offenses with different elements. " 'In contrast to the case of voluntary manslaughter . . . the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to reach the traditional malice requirements.' " *Mendoza, supra* at 541, quoting *United States v Browner*, 889 F2d 549, 553 (CA 5, 1989). The jury might well have concluded that there was no "provocation induced passion" to support a voluntary manslaughter conviction but that defendant's mental state nonetheless warranted a conviction of involuntary manslaughter.

Further, I reject the prosecutor's claim that, because the jury convicted defendant of second-degree murder, it necessarily found that defendant acted with malice,

so that "an instruction on common law involuntary manslaughter would not have produced a different result." The prosecutor's argument here is that the jury would simply have acquitted defendant if it concluded that he acted without malice. That argument has been specifically rejected by our Supreme Court in *Silver*, *supra* at 393 n 7:

> One might argue that the jury would have acquitted defendant if it believed his testimony. However, this is too facile. The United States Supreme Court rejected such an argument in *Keeble v United States*, 412 US 205, 212-213; 93 S Ct 1993; 36 L Ed 2d 844 (1973), when it stated:
>
> "[I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction . . . precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."

The facts of this case are somewhat similar to those in *Silver*. At issue there was the state of mind of a defendant who had clearly and admittedly entered a residence without permission. *Id*. at 392. Nonetheless, the defendant claimed that he had no intent to steal or commit any other offense while in the dwelling. The trial court instructed the jury regarding first-degree home invasion but denied defendant's request for an instruction on the lesser included offense of breaking and entering without permission. *Id*. at 390. The Supreme Court reasoned that "[i]f the jurors believed defendant [acted without the appropriate criminal motive], they realistically could not act on [that belief]

unless they had an instruction that gave them that choice. Not to give them an instruction that allowed them to agree with defendant's view of the events in this case undermines the reliability of the verdict." *Id.* at 393.

The same is true here. Consistently with the result in *Silver*, I would reverse defendant's conviction of second-degree murder and remand the case for a new trial by a properly instructed jury. *Id.* at 394.