# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH EMMANU WATSON, also known as
JOE E. WATSON and JOSEPH EMMANUEL
REED,

        Defendant-Appellant.

UNPUBLISHED
March 1, 2018

No. 335334
Wayne Circuit Court
LC No. 16-004499-01-FC

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant, Joseph Emmanu Watson, appeals by right his jury convictions of second degree murder, MCL 750.317, assault with intent to inflict great bodily harm, MCL 750.84, carrying a concealed weapon, MCL 750.227, possession of a firearm by a felon, MCL 750.224f, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. The trial court sentenced him to serve 50 to 75 years for second-degree murder, five to ten years for the assault, two to five years for carrying a concealed weapon, two to five years for felon in possession, and two years for felony firearm. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of the death of Jose Zambrano during a visit to the home of defendant's cousin, Lee Wilson ("Lee") on February 20, 2016. The victim and Lee were friends and neighbors. For the most part, the facts are not disputed. On that date, Lee was having a party at his home when defendant arrived. According to Lee, defendant seemed to be "tripping" after smoking some marijuana, and began accusing people of being out to get him and he was also brandishing a gun. When Lee first saw defendant with the weapon he told defendant to put the gun away and defendant complied. Lee then tried to get other party guests to take defendant home, but none would because he had a gun. After defendant pulled his gun on numerous occasions, Lee sent his children into a back bedroom in the home. It was shortly after this that the victim arrived with his three-year-old son Angel. The victim greeted the family, and as Lee reached to pick up Angel to hug the child, defendant fired multiple shots.

Two bullets hit the victim and he fell to the ground. Another guest, who was shot in the arm, ran out of the room. Defendant also shot at Lee's mother, who ran out of the room and got

-1-

Angel and another child to the relative safety of the back room. Defendant then grabbed Lee and forced him to the floor holding the gun to his head. Lee heard the victim say that he could not breathe, and defendant said something about the victim still moving, then immediately shot the victim a third time. The victim, who had been grazed on the chin and shot twice in the chest, died from blood loss shortly thereafter.

Calls were made to 911 and when four police officers arrived, defendant dropped the gun and raised his hands. Three officers worked to secure the scene and one attended to the victim, who was still breathing at that time. Defendant was handcuffed, but managed to break free and run out the front door. Three officers chased him to a dead end street, where he tried to jump through the window of a house and fought the officers before he was subdued and arrested.

In addition to the weapons charges, defendant was charged with first-degree murder and assault with intent to murder two other guests. The jury acquitted him of first-degree murder and of the assault on Lee's mother, but found him guilty of second degree murder and the assault on another guest as well as all three weapons charges. During sentencing, the parties agreed that the applicable minimum guideline range was 365 months to 600 months. Defense counsel argued for a sentence below the guidelines on the ground that defendant was acting on delusional thoughts about the victim due to having ecstasy in his system. The trial court proceeded to sentence defendant to the maximum sentence within the guidelines, stating that the death and harm wrought by defendant were both "senseless" and "tragic."

Defendant filed a motion to remand for resentencing, arguing that his sentence was unreasonable. This Court denied the motion and this appeal ensued.

## II. JURY INSTRUCTIONS

On appeal, defendant argues that the trial court erred in refusing to provide the jury instruction for voluntary manslaughter as a lesser included defense because defendant was under the influence of ecstasy and therefore unable to form the intent required for murder.

This Court reviews questions of law concerning jury instructions de novo. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). Jury instructions "must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). A trial court's duty to so instruct necessarily depends on the evidence provided during the trial. *People v Pouncey*, 437 Mich 382, 387; 471 NW2d 346 (1991). "[V]oluntary manslaughter is a cognate lesser included offense of murder." *Id*. at 388. The rule for whether an instruction must be given on a cognate lesser included offense is that, if the record evidence "would support a conviction of the cognate lesser offense, then the trial judge, if requested, must instruct on it." *Id*. at 387. There must be more than some evidence, however. If there is less than would be needed for a conviction, then the judge does not err in refusing to give the instruction. *Id*.

In *Pouncey*, our Supreme Court explained the elements of voluntary manslaughter: "First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person

could control his passions." *Id*. at 388. Provocation is adequate only when it would cause a reasonable person to lose control. *Id*. at 389. The Court elaborated:

> "The law does not excuse actors whose behavior is caused by just any . . . emotional disturbance . . . . Rather, the law asks whether *the victim's provoking act* aroused the defendant's emotions to such a degree that the choice to refrain from crime became difficult for the defendant. The legal doctrine reflects the philosophical distinction between emotions that only cause choice and emotions so intense that they distort the very process of choosing." [*Id*. at 389, quoting Moore, *Causation and the Excuses*, 73 Cal L Rev 1091, 1132 (1985) (emphasis added).]

In *Pouncey*, as here, the issue was whether the defendant was sufficiently provoked. There, the evidence showed that the defendant and his friends Mr. White and Mr. Johnston went to the house of a Mr. Bland and accused him of stealing Mr. White's car. When Mr. Bland denied it, they left, but Mr. Bland followed them to Mr. White's house with his older brother, Mr. Powers, who became the victim in that case. *Id*. The argument continued, and the victim threatened to "put the defendant 'on his head,'" called the defendant names and walked towards the defendant while being held back by his brother. *Id*. at 384-385. The defendant testified that he knew that the victim was unarmed. *Id*. at 385. He walked into the house and came back with a shotgun, instructing Mr. Johnston to hit the victim with a monkey wrench. When the victim ducked the attempted blow, the defendant shot the victim and then drove away. *Id*. Because the victim's provocation of the defendant was purely verbal, the Supreme Court held that "[t]he judge was absolutely correct in ruling that as a matter of law there was insufficient evidence to establish an adequate provocation." *Id*. at 391-392.

Here, the evidence clearly established that the victim did not provoke defendant. Rather, the victim had been invited to the house earlier that day, and came with his three-year-old son for a visit with his close friends, as he did quite frequently. Defendant shot the victim almost immediately as he was greeting the family, then shot him again as he lay defenseless on the floor. Lacking any evidence of physical provocation by the victim, defendant argues that ecstasy was the provocation, and that any reasonable person who took ecstasy would have become paranoid and lost control of himself. Defendant does not cite to and this Court cannot find any support for this argument aside from noting the standard for adequate provocation is objective; that of a reasonable man, not a reasonable man on drugs.

This Court explained the need for an objective standard in *People v Sullivan*, 231 Mich App 510, 519; 586 NW2d 578 (1998):

> "If reasonableness were not required, a man who flew into a rage and killed a woman for refusing to have sex with him would be guilty of nothing more than manslaughter. Furthermore, when the law rewards irrational behavior, it encourages people to feign irrationality. Thus, if the man in the above hypothetical [a man who flies into a rage at the slightest insult] had coolly decided to kill the woman as punishment for her refusal, he would be encouraged to feign rage in order to mitigate his crime." [Citation omitted.]

Thus, *Sullivan* held that no special traits of a defendant may be considered when examining the issue of adequate provocation, adding "[t]he fact that [the] defendant may have had some mental disturbance is not relevant to the question of provocation." *Id*. at 519-520. It is axiomatic that the reasonable person standard does not include a person who is not reasonable because he is under the influence of illegal narcotics at the time of the murder. Whether the defendant was mentally disturbed, for whatever reason, bears no relevance to the question of whether he was adequately provoked by the victim. *Id*. at 519-520. Therefore, the trial court did not err in refusing to give the instruction for voluntary manslaughter. Defendant is not entitled to relief on this issue.

Defendant next argues that he was also entitled to have had the second paragraph of the Michigan Criminal Jury Instruction 6.2(2) included as part of the jury instructions. MCJI 6.2(2) states, in relevant part:

> The defendant is not guilty of [murder] if the defendant proves by a preponderance of the evidence that he lacked the intent to [kill] because he *voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he would become intoxicated or impaired as a result*. Jury instructions should not include any instruction that is unsupported by evidence. (Emphasis added.)

Here, there was no evidence that defendant "consumed a legally obtained and properly used medication or other substance and did not know and reasonable should not have known that he would become intoxicated or impaired as a result." The requested instruction applies only to a defendant who consumed a legal medication, used it properly, and had no reasonable way to know that he would become impaired as a result. In this case defendant, by his own admission, took ecstasy, which is neither legal nor a medication. Nor can it be said to be a substance from which defendant did not know that he would become intoxicated. Consequently, the plain language of MCJI 6.2 compels us to conclude that defendant was not entitled to have the trial court instruct the jury by reading MCJI 6.2(2). Accordingly, defendant is not entitled to relief on this issue.

## III. REVIEW OF SENTENCE

Defendant next argues that his sentence for murder should be reviewable for reasonableness despite the fact that he was sentenced within the minimum sentence guidelines.

This Court reviews de novo issues that involve the interpretation and application of the minimum sentence guidelines. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

Our Supreme Court found Michigan's sentencing guidelines to be constitutionally deficient under *Alleyne v United States*, 570 US 99, 133 S Ct 2151, 186 L Ed 2d 314 (2013). *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), concluding that Michigan's sentencing guidelines violate the Sixth Amendment right to a jury trial whenever judicially-

found facts mandatorily increase the minimum sentencing range. *Id*. To cure the constitutional deficiency, the Court severed MCL 769.34(2)[1] to the extent that it compelled the sentencing of defendants based on facts not admitted by the defendant or found by a jury beyond a reasonable doubt, and struck down the requirement set forth in MCL 769.34(3)[2] for a court to articulate a "substantial and compelling reason" for departing from the guideline range. *Id*. at 364-365. Consequently, while trial courts must still score the guidelines and consider that score in sentencing a defendant, the guidelines are now advisory only, and "a sentence that *departs from the applicable guidelines* range will be reviewed by an appellate court for reasonableness." *Id*. at 365 (emphasis added). When our Supreme Court recently considered how such a review should be conducted in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017), it again characterized *Lockridge* as holding that "*departure* sentences post-*Lockridge* would be reviewed for reasonableness." *Id*. at 462 (emphasis added).

MCL 769.34(10) requires appellate courts to affirm any minimum sentence that falls within the guidelines range, unless there is an error in scoring the guidelines or inaccurate information was relied on in determining the sentence.[3] As we previously have determined, the holding in *Lockridge* did not strike down or limit MCL 769.34(10) in any way. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016) (a reasonableness review is not warranted because the sentence was within the applicable guidelines and the defendant did not contend that any factor was scored incorrectly or inaccurate information relied upon).

Like the defendant in *Schrauben*, defendant does not contend that the guidelines were scored incorrectly or that erroneous information was relied upon in scoring the applicable factors. He claims instead that *Schrauben* was wrongly decided and argues that a review should be conducted any time a sentence departs upwards from the minimum guideline range that would be applicable if only jury-found facts were used in scoring the sentencing factors. Defendant provides no supporting authority for his position, and we are aware of none. Accordingly, we

---

[1] MCL 769.34(2) provides:

> Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in part 2 of chapter XVII committed on or after January 1, 1999 *shall* be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed. (Emphasis added.)

[2] MCL 769.34(3) provides, in relevant part: "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII2 if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure."

[3] MCL 769.34(10) provides, in relevant part: "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."

decline his implied offer to declare a conflict with *Schrauben*. Accordingly, because this case is indistinguishable from *Schrauben*, we conclude that defendant is not entitled to have his sentence reviewed for reasonableness.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle