*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERRI CONIC,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 360347
Saginaw Circuit Court
LC No. 20-047340-FC

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 25 to 50 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

Defendant was convicted of second-degree murder after she ran the victim over with her car. Defendant and the victim had been in a relationship for approximately 12 to 17 years. On the day in question, the victim had decided to end the relationship and put defendant's belongings out in his driveway. The victim left his home to run errands with a friend named Eugene Moten. While Eugene and the victim ran errands, the victim received more than 10 phone calls from defendant. The victim put defendant on speaker phone, and Eugene heard defendant scream at the victim and threaten to break the windows out of his home. Once Eugene and the victim finished their errands, they stopped by the victim's home to see if defendant had broken any windows. As they were pulling out of the driveway to leave again, they noticed that the door to the house looked like it had been forced open. Eugene told the victim not to go in the house and to instead call the police.

The victim called the police, and while the two men were waiting for them to arrive, defendant showed up and backed her car into the driveway. Defendant got out of the car and began yelling at the victim. Eugene called his wife, Pamela, to pick him up from the victim's home because he did not want to be in the middle of a fight between defendant and the victim. When Pamela arrived, an altercation occurred between defendant and Pamela because of defendant's

-1-

conduct toward Eugene. Eugene was able to break up the struggle between defendant and Pamela. Eugene told Pamela to move her car out of the driveway so that defendant could leave the residence.

Eugene testified that once the driveway was clear, defendant put the car in gear and turned the tires toward the victim, who was standing near the passenger side of the car. The victim put his hands on the car and was pushing back when he slipped in the snow and went under the car. Eugene and Pamela shouted at defendant to stop. Instead, defendant continued to accelerate back and forward over the victim. Police officers arrived a few minutes later and saw defendant in her car, on top of the victim. One of the officers approached defendant's car and saw an open bottle of liquor inside of it. He also attested that he smelled the odor of intoxicants coming from defendant. The officer put defendant in the back seat of his patrol car and returned to the victim. At first, the victim was responsive to the officer's questions, but he eventually became unresponsive. Once the victim was removed from under the car, he was taken to a local hospital. The victim died a few weeks later as a result of the injuries he sustained from being hit by defendant's car.

Saginaw Police Detective Patrick Busch testified that he arrived on the scene after the victim was taken to the hospital. Detective Busch testified that tire marks in the driveway appeared to be acceleration marks, and he noted that there were no tire marks indicating deceleration. Detective Busch interviewed defendant, who originally said that she did not realize that the victim was under the car until after the accident, but she then admitted that she "felt the thump or a bump." Defendant stated that, after she felt the bump, she turned off the car and got out. However, later in the interview, defendant acknowledged that she was trying to leave before police arrived.

Defendant was charged with open murder, MCL 750.316. At the jury trial, the prosecutor argued that there was sufficient evidence to establish beyond a reasonable doubt that defendant intentionally killed the victim and was guilty of first-degree murder, or in the alternative, second-degree murder. The prosecutor presented photographs of the victim's home to demonstrate how the accident occurred. Additionally, the prosecutor showed the body-camera, dash-camera, and in-car camera footage from one of the officers who first arrived on the scene to corroborate witness testimony about the incident. The prosecutor also presented a 911 call in which the parties agree that defendant can be heard saying "I'll kill you." In turn, defendant argued that there was reasonable doubt whether defendant acted with premeditation or malice when she hit the victim with her car. Instead, defendant argued that the jury should consider the lesser offense of statutory involuntary manslaughter.

At the close of the prosecution's case, defendant moved for a directed verdict, arguing that the prosecutor presented insufficient evidence to prove that she was guilty of first- or second-degree murder. Defense counsel argued that the prosecutor failed to demonstrate premeditation and deliberation, or in the alternative, malice. The trial court denied defendant's motion. The trial court instructed the jury regarding the elements of first-degree murder, second-degree murder, and voluntary manslaughter. The trial court also provided instructions regarding voluntary intoxication and self-defense. The jury returned a guilty verdict for the lesser included offense of second-degree murder.

## II. ANALYSIS

## A. JURY COMPROMISE

Defendant argues that the first-degree and second-degree murder charges were improperly submitted to the jury, and that the verdict was likely the product of jury compromise. Specifically, defendant contends that these charges were improperly submitted to the jury because the prosecutor presented insufficient evidence to demonstrate that defendant acted with premeditation or malice. We disagree.

We review de novo a challenge to the sufficiency of the evidence to support a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id.*, quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Reversal is not generally required when a jury returns inconsistent verdicts within a single trial. *People v Montague*, 338 Mich App 29, 51; 979 NW2d 406 (2021). In fact, a jury is "not held to any rules of logic" whatsoever and is not required to explain why it reached a decision. *Id.* (quotation marks and citation omitted). To have a conviction reversed on the basis of inconsistent verdicts, a defendant must show "confusion by the jury, a misunderstanding of the instructions, or impermissible compromises." *Id.* A defendant bears the burden of making this showing. *Id.*

On this record, defendant has failed to demonstrate that the first-degree murder charge was improperly submitted to the jury or that insufficient evidence supported the charge. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Defendant only disputes the premeditation and deliberation element of the charge. "When first-degree murder is premised on premeditation, the prosecutor must prove that the defendant acted with the intent to kill the victim and must show that he acted deliberately and with premeditation." *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019). "[P]remeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a 'second look' at their actions." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019) (citation omitted). Additionally, "[p]remeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* at 384 (quotation marks and citation omitted).

Even though the jury presumably did not find that defendant acted with premeditation or deliberation, when viewed in a light most favorable to the prosecution, there was sufficient evidence for the trial court to submit the charge of first-degree premeditated murder to the jury. Eugene testified that defendant and the victim got into a dispute after the victim decided to break up with defendant, with whom he had been in a relationship with for over a decade. On the day in

question, Defendant repeatedly called the victim and was verbally aggressive, and even threatened to break the windows out of the victim's house. Defendant told the victim "I'll kill you", and the comment was heard by the 911 operator. Eugene testified that defendant arrived at the victim's home, backed her car into the driveway, and proceeded to argue with the victim about why he was putting her out. After a brief altercation with Eugene's wife, defendant got into her car to leave. However, instead of pulling straight out the driveway, defendant turned the car to the right and directly hit the victim. She did not try to stop the car or call for help. Rather, defendant continued to accelerate, running over the victim repeatedly, and did not stop until police arrived.

Further, both Eugene and Pamela testified that the victim was standing on the passenger side of defendant's car. Eugene testified that the victim was walking around the car when defendant got in it. Eugene explained that defendant could have avoided the victim if she had pulled straight out the driveway because she backed in, but instead, she deliberately turned her wheel to the right and hit the victim. Both Eugene and Pamela testified that they yelled at defendant to stop, but that defendant did not listen. Rather, defendant continued to accelerate her engine as she drove aggressively over the victim multiple times. Thus, there was sufficient evidence to demonstrate that defendant deliberately, aggressively, and repeatedly drove forward and over the victim, causing his eventual death. As such, the charge of first-degree murder was properly submitted to the jury.

We are similarly unpersuaded by defendant's argument that the charge of second-degree murder was improperly submitted to the jury. At the time of defendant's conviction, "[t]he elements of second-degree murder [were]: (1) a death, (2) caused by an act of the defendant, (3) *with malice*, and (4) without justification or excuse."[1] *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022) (quotation marks and citation omitted; emphasis added). See also *People v McMullan*, 284 Mich App 149, 156; 771 NW2d 810 (2009). "Malice may be established in three ways: by showing (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Gafken*, 510 Mich at 511. "[T]he third theory for proving malice can be shown by the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result." *Id*. (quotation marks and citation omitted). "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (quotation marks and citations omitted).

The evidence presented supports a finding that defendant acted "in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Gafken*, 510 Mich at 511. Eugene testified that defendant was being aggressive in the altercation with the victim, that the victim did not get physical or aggressive with defendant,

---

[1] This Court has subsequently determined that "without justification or excuse" is "not a true element of second-degree murder." *People v Spears*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No 357848); slip op at 14-15. In any event, defendant does not raise an argument about justification or excuse. Rather, defendant disputes only the element of malice.

and that defendant refused to leave when the victim asked. Eugene testified that defendant had backed into the driveway when she arrived at the victim's house, and he explained that defendant could have pulled straight out of the driveway. Instead, defendant jerked the car to the right and struck the victim. Defendant did not try to stop the car after hitting the victim; rather, defendant kept trying to move the car despite being stuck on top of the victim. Detective Patrick Busch testified that the tire marks on the ground indicated that defendant accelerated for a prolonged period without any sign of deceleration. Accordingly, there was sufficient evidence to support the jury's verdict of guilty of second-degree murder.

## B. SCORING ERROR

Next, defendant argues that zero points should have been assessed for offense variables (OVs) 1 and 2 because a vehicle is not an instrument used for attack or defense, which therefore means that a vehicle cannot be considered a weapon. We disagree.

A defendant is entitled to resentencing when a trial court commits an error in scoring the sentencing guidelines and when this error "altered the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006). Here, 10 points were assessed for OV 1, and one point was assessed for OV 2. OV 1 addresses "aggravated use of a weapon," MCL 777.31, while OV 2 addresses "lethal potential of the weapon possessed or used," MCL 777.32. Ten points are assessed for OV 1 if "[t]he victim was touched by any other type of weapon[.]" MCL 777.31(1)(d). One point is assessed for OV 2 if the defendant "possessed or used any other potentially lethal weapon[.]" MCL 777.32(1)(e). Neither provision defines "weapon." However, as defendant acknowledges, this Court has previously utilized the dictionary definition of "weapon," that is, "1. any instrument or *device* used for attack or defense in a fight or in combat. 2. *anything* used against an opponent, adversary, or victim . . . . 3. any part or organ serving for attack or defense, as claws, horns, teeth, or stings." *People v Ball*, 297 Mich App 121, 125; 823 NW2d 150 (2012) (quotation marks and citation omitted; emphasis added; alteration in original).

The definition of weapon is clearly and unambiguously broad, and there is no indication that it is limited to traditional weapons, e.g., firearms or knives. This Court has found that a vehicle may be considered a dangerous weapon if used in the furtherance of accomplishing an assault and if capable of inflicting serious injury. *People v Sheets*, 138 Mich App 794, 799; 360 NW2d 301 (1984). Therefore, it is immaterial that a vehicle does not have the characteristics of a traditional weapon. What matters is whether defendant used her car against the victim in the same manner that one would use a traditional weapon like a gun or a knife. As previously discussed, there was ample, undisputed evidence that defendant struck and ran over the victim with her car. Therefore, the vehicle was used as a weapon, and as such, the trial court did not err by assessing 10 points for OV 1 and one point for OV 2.

## C. PROPORTIONALITY OF SENTENCE

Lastly, defendant argues that the trial court abused its discretion when it imposed a 25-year minimum sentence for her second-degree murder conviction. We disagree.

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and

citation omitted).  "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ."  *Id*. (quotation marks and citation omitted; ellipsis in original).  "[T]he principle of proportionality simply requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *Id*. at 501 (quotation marks and citations omitted).

Michigan's sentencing guidelines are advisory, but trial courts must still consult the guidelines and take them into account during sentencing.  *People v Lockridge*, 498 Mich 358, 381; 870 NW2d 502 (2015).  Until recently, this Court was bound to affirm any minimum sentence that fell within the guidelines range.  See MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), overruled in part by *People v Posey*, ___ Mich ___, ___ (2023) (Docket No. 162373); slip op at 4.  However, our Supreme Court has struck down the portion of MCL 769.34(10) that requires appellate courts to affirm within-guidelines sentences, and determined that all sentences must be reviewed for proportionality.  *Posey*, ___ Mich at; slip op at 33-34.  The *Posey* Court therefore "overrule[d] the portion of [*Schrauben*, 314 Mich App 181] that requires the Court of Appeals to affirm a trial court's sentence if the defendant's minimum sentence lies within the recommended guidelines minimum sentence range."  *Posey*, ___ Mich at ___; slip op at 4.

Defendant's minimum sentencing guidelines range for her second-degree murder conviction was 225 to 468 months.  The trial court sentenced defendant within the guidelines range to a minimum term of imprisonment of 300 months, i.e., 25 years.  Under *Posey*, we are entitled to review this sentence for reasonableness and proportionality, just as we would a departure sentence.  Defendant contends that her minimal criminal history and her alleged volatile relationship with the victim constitute unusual circumstances that render her within-guidelines sentence disproportionate to the seriousness of the offense and the offender.  We disagree.

First, the record does not support defendant's contention that she was in a volatile relationship with the victim.  Neither the prosecutor nor defendant presented evidence to demonstrate that defendant and the victim had a history of domestic disturbances.  The only evidence presented to support the notion that defendant and the victim had a volatile relationship were the events that occurred on the day of the incident at issue here, while the victim was clearly attempting to break up with defendant.  However, a single day of volatile interactions does not sufficiently establish that defendant and the victim were in a volatile relationship.  Moreover, defendant's argument on this point consists of a single sentence in her brief on appeal.  She does not explain why this alleged volatile relationship should have had any bearing on the trial court's sentencing decision.  An appellant may not simply make an assertion and leave it up to this Court to discover the basis for his or her claims.  *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).  Without further evidence or explanation, we conclude that this argument lacks merit.

Defendant also notes that the trial court relied on her prior misdemeanor and felony convictions during sentencing.  At sentencing, the trial court reflected on

> the fact that [defendant] was still on probation and still subject to the conditions of probation—which included that she not use or possess alcoholic beverages or other

intoxicants, and that she not engage in any assaultive, abusive, threatening or intimidating behavior—she went out and created this situation.

Again, defendant does not explain why she believes the trial court erred in considering her criminal history during sentencing or why her 25-year minimum sentence was unreasonable and disproportionate as a result. Consequently, she once again leaves this Court to infer the basis for her claim. See *Bowling*, 299 Mich App at 559-660. We decline to do so here. Accordingly, defendant has failed to demonstrate that her sentence was disproportionate.

### III. CONCLUSION

Defendant has failed to show that the trial court committed any errors warranting relief. Accordingly, we affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick