*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 26, 2019

Plaintiff-Appellee,

v

No. 344785
Kalamazoo Circuit Court
LC No. 2016-001742-FC

JORDAN DANGELO WAIRE,

Defendant-Appellant.

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Defendant, Jordan Dangelo Waire, appeals as of right from his jury convictions for first-degree felony murder, MCL 750.316(1)(b); three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; armed robbery, MCL 750.529; and being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life imprisonment.

On appeal, defendant argues that (1) the trial court erred by failing to instruct the jury on involuntary manslaughter as a necessarily included lesser offense; (2) trial counsel was ineffective for failing to inquire of defendant's desire to testify; (3) defendant was denied a fair trial when the trial court allowed admission of gruesome autopsy photos and trial counsel was ineffective for failing to object to their admission; and (4) the trial court's admission of preliminary hearing testimony at trial violated defendant's right to confront his accuser. Because we find no error, we affirm.

## I. PERTINENT FACTS

On December 8, 2016, Jacob Jones, a student at Western Michigan University (WMU), was shot and killed in his apartment in Kalamazoo, Michigan. At trial, defendant's codefendant, Joeviair Kennedy, invoked his right to remain silent, which resulted in the trial court declaring Kennedy an unavailable witness under MRE 804(b)(1) and permitting the prosecution to show the jury a video of Kennedy's previous testimony at defendant's preliminary examination.

-1-

During that testimony, Kennedy admitted that he and defendant committed the armed robbery at Jones's apartment that resulted in Jones's death, and he described at length what transpired. Specifically, Kennedy, who played basketball for WMU at the time, testified that on the evening of December 8, defendant picked him up after basketball practice and time at the study table. They went back to the apartment where defendant was staying. Defendant showed him a .40 caliber gun and asked him whether he knew "anyone that we can rob." Kennedy suggested Jones. Together, defendant and Kennedy drove to Jones's apartment. Defendant wore a bandana to conceal his face and Kennedy shrouded his identifiable hair in the hood of his sweatshirt. When they entered the apartment, there were a few other people present in addition to Jones. Defendant immediately waived the gun at everyone and demanded marijuana. When they said they didn't have any, defendant pointed the gun at Jones and shot him in the head. Defendant then pursued his demands for marijuana, collected four grams of marijuana and around $25, and demanded everyone's cell phones. As defendant and Kennedy prepared to leave, one of the robbery victims tackled defendant. Kennedy intervened by getting on top of the victim and throwing punches, freeing defendant. Kennedy and defendant fled together. However, Kennedy left his cell phone at the scene. At trial, the other victims who were in Jones's apartment that night corroborated Kennedy's testimony. One witness testified that defendant pistol whipped Jones before shooting him. Jones died from a gunshot wound to the face.

After recovering his cell phone at the scene of the crime, the police identified Kennedy as a suspect and executed a search at his apartment. They recovered a gray and black WMU Adidas sweatshirt. Inside the pocket of the sweatshirt, law enforcement discovered a red bandana and a Winchester .40 caliber bullet shell casing. They also recovered a cell phone belonging to one of the robbery victims in a wooded area behind Kennedy's apartment. Further investigation revealed that defendant and another individual, Michael Dobson, purchased Winchester .40 caliber bullets at a Meijer in Kalamazoo on the day of the robbery. Dobson, defendant's friend, testified that he saw defendant with a gun and that defendant asked him to purchase the ammunition because defendant had forgotten his wallet. He also saw defendant and Kennedy together later that evening "acting irate," and he noticed that they had changed their clothes. A ballistics expert explained that the recovered bullet casing matched the bullet recovered during Jones's autopsy. In addition to Kennedy's testimony, several of the victims were able to identify defendant at trial as the shooter. The prosecution also presented evidence that in January 2017, while incarcerated at the Kalamazoo County jail, defendant asked another inmate to relay a message to Kennedy "not to open his mouth about the case" and "to tell him that snitches get stiches." Defendant did not present any evidence at trial. The jury found defendant guilty of all charges. Defendant now appeals.

II. DISCUSSION

A. INVOLUNTARY MANSLAUGHTER

Defendant first contends that the trial court erred by refusing to instruct the jury on involuntary manslaughter. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). We conclude that the trial court did not abuse its discretion by declining to instruct

the jury on involuntary manslaughter because a rational view of the evidence does not support such instruction.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *Dobek*, 274 Mich App at 82. In *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009), aff'd 488 Mich 922; 789 NW2d 857 (2010), this Court set forth the legal analysis for determining whether a trial court must instruct the jury on involuntary manslaughter as a lesser included offense of murder:

> A homicide committed with malice is murder. *People v Mendoza*, 468 Mich 527, 534-536, 664 NW2d 685 (2003). In contrast, the unintentional killing of another, " 'committed with a lesser mens rea of gross negligence or an intent to injure, and not malice,' " is common-law involuntary manslaughter. [*People v Gillis*, 474 Mich 105, 138; 712 NW2d 419 (2006)], quoting *People v Holtschlag*, 471 Mich 1, 21-22, 684 NW2d 730 (2004). Common-law involuntary manslaughter is a necessarily included lesser offense of murder. *Mendoza*, [468 Mich] at 540-542. If a defendant is charged with murder, the trial court should instruct the jury on common-law involuntary manslaughter, but *only if the instruction is supported by a rational view of the evidence. Id*. at 541. . . .
>
> To find involuntary manslaughter, a defendant must not act with malice. *Gillis*, [474 Mich at 138]. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "[M]alice is implied when the circumstances attending the killing demonstrate an abandoned and malignant heart . . . ." *Id*. at 467. It can also "be inferred from the use of a deadly weapon." *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). [Emphasis added.]

In sum, defendant was entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding that Jones's death was "caused by an act of gross negligence or an intent to injure, and not malice." *Gillis*, 474 Mich at 138 (quotation marks and citation omitted). When determining whether an involuntary manslaughter charge was necessary, this Court must "review all of the evidence irrespective of who produced it to determine whether it provides a rational view to support an instruction on the lesser charge" and should reverse the trial court's decision to omit the jury instruction only where substantial evidence supported giving the instruction. See *People v McMullan*, 488 Mich 922, 922; 789 NW2d 857 (2010).

Defendant contends that the trial court should have instructed the jury on involuntary manslaughter.[1] In the present case, the evidence demonstrated that defendant purchased

---

[1] Defendant proclaims error in the failure to give the involuntary manslaughter instruction, but essentially concedes in his brief that the facts admitted into evidence do not rationally support

ammunition for his firearm earlier in the day and purposefully targeted a particular victim. Enlisting his friend Kennedy to help, defendant entered Jones's apartment with a loaded firearm and quickly used the firearm to pistol-whip and shoot Jones. Even after he shot Jones, defendant did not disengage but continued to perpetuate the robbery and threaten shooting others. No rational view of defendant's conduct and the circumstances of the crime, including the use of a deadly weapon, could support a finding of gross negligence or intent to injure without malice. See *Gillis*, 474 Mich at 138. Because no substantial evidence supports giving an involuntary manslaughter instruction, *McMullan*, 488 Mich at 922, we conclude that the trial court did not abuse its discretion by not instructing the jury on the lesser offense.[2]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that his trial counsel was ineffective for not inquiring of defendant's desire to testify. Defendant relates that the record reflects no colloquy concerning defendant's right to remain silent or to choose to testify. Because of the absence of any discussion on the record, defendant argues that trial counsel and the trial court unlawfully precluded defendant from making the decision for himself whether to testify. We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* at 51.

In the present case, defendant did not move in the trial court for a new trial or for an evidentiary hearing. Therefore, our review is for mistakes apparent on the record. *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018). We review de novo "whether defense counsel's acts or omissions fell below an objective standard of reasonableness under

---

the instruction because defendant was not asked if he wanted to testify, which is addressed in the next issue on appeal, and because defense counsel called no witnesses who might have supported an accidental version of the shooting, but defendant identifies no such witnesses who would have possessed such information.

[2] Even if the trial court should have instructed the jury on involuntary manslaughter, failure to do so would constitute harmless error. The trial court instructed the jury on first-degree felony-murder and on second-degree murder, and the jury convicted on the greater offense. If the jury had any doubts that defendant committed first-degree felony murder, it could have convicted defendant of the lesser charge of second-degree murder. Its refusal to do so indicates a lack of likelihood that it would have convicted defendant of the lesser charge of involuntary manslaughter. See *People v Beach*, 429 Mich 450, 490-491; 418 NW2d 861 (1988), superseded by statute on other grounds as stated in *People v Smith-Anthony*, 494 Mich 669 (2013); see also *People v Sullivan*, 231 Mich App 510, 520; 586 NW2d 578 (1998).

-4-

prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *Id*.

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Although it would have been prudent to do so, there is no formal requirement that counsel or the trial court memorialize an on-the-record waiver of a defendant's decision not to testify. See *People v Harris*, 190 Mich App 652, 661; 476 NW2d 767 (1991) (recognizing that "there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify"). Therefore, contrary to defendant's argument, the absence of a colloquy memorializing defendant's election not to testify does not necessarily support the conclusion that defense counsel's performance was deficient. Even assuming that trial counsel failed to inform defendant of his right to testify, defendant has not established entitlement to relief.

In *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985), we held that, even assuming defense counsel did not inform the defendant of his right to testify, there was no basis for relief on an ineffectiveness of counsel claim when the defendant failed to allege that he was ignorant of his right to testify in his own defense, "d[id] not allege that he would have testified if presented with the option[,]" and provided "no indication of what his testimony would have been." In the present case, as in *Simmons*, there is simply nothing in the existing record to show that defendant was ignorant of the right to testify, that he would have testified if given the chance, or that the substance of his testimony would have had any likelihood of undermining confidence in the jury's verdict. Because defendant has not shown that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that he suffered prejudice therefrom, defendant's claim of ineffective assistance of counsel necessarily fails. *McFarlane*, 325 Mich App at 527.

## C. ADMISSIBILITY OF AUTOPSY PHOTOGRAPHS

Defendant also argues that the trial court plainly erred by admitting into evidence several gruesome autopsy photographs. We disagree. This issue comes to the Court unpreserved, so our review is for plain error that affected defendant's substantial rights. See *People v Carines*, 460 Mich 750, 761-763; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 725-726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 764-765.

"The decision to admit or exclude photographs is within the sole discretion of the trial court." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Our Supreme Court emphasizes that "[g]ruesomeness alone need not cause exclusion" and "[t]he proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id*. at 76. In *Mills*, our Supreme Court set forth the correct analysis for determining whether photographs are unduly prejudicial:

Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors. Generally, also, the fact that a photograph is more effective than on oral description, and to the extent calculated to excite passion and prejudice, does not render it inadmissible in evidence. [*Id*. at 76-77 (quotation marks and citations omitted).]

In this case, the prosecution used the challenged photographs to identify the victim and to both supplement and corroborate testimony concerning the nature, type, and location of the victim's injuries.[3] This Court has approved of the use of autopsy photographs for these purposes. See *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008); see also *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998) (holding that admission of gruesome photographs was proper where there was a legitimate purpose other than arousing the sympathies or prejudices of the jury). Moreover, even assuming that the trial court plainly erred in admitting the photographs, defendant cannot demonstrate that the error affected the outcome of trial. See *Carines*, 460 Mich at 763. There was significant evidence directly establishing defendant's guilt, including the preserved testimony of his codefendant and direct testimony from several victims who were able to identify defendant as the shooter. Moreover, there was evidence establishing that defendant attempted to prevent his codefendant from testifying through threats and intimidation. See *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) (acknowledging that a defendant's threat against a witness demonstrates consciousness of guilt).

We also conclude that trial counsel was not ineffective for failing to object to the admission of the autopsy photographs.[4] It is likely that the trial court would have admitted the

---

[3] Specifically, Dr. Joseph Pralow, a forensic pathologist and deputy medical examiner, used the photographs to explain where Jones was shot, how close the gun was to the bullet's point of entry, the likely pathway of the bullet and its resulting damage, and other injuries suffered by Jones. That the gunman held the gun close to the victim's face when he shot him, and that he used the gun to pistol-whip the victim was circumstantial evidence relevant to the question of whether defendant acted with malice, an element of the charged crimes. See *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008) (concluding that photographs that address matters at issue are relevant and not unduly prejudicial).

[4] In an introductory sentence to this issue in his brief, defendant remarks that his trial counsel failed to object to the entry into evidence of the autopsy photographs. Despite no further

contested photographs even over an objection because they were relevant to the nature, type, and location of the victim's injuries. The fact that the photographs may have aroused some passion or prejudice did not render them inadmissible in evidence. See *Mills*, 450 Mich at 77. Trial counsel was not required to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Again, even assuming that defense counsel objected and successfully precluded the admission of some or all of the contested photographs, we are not persuaded that the outcome of trial would have differed because the prosecution presented overwhelming evidence of defendant's guilt.

## D. CONFRONTATION CLAUSE

Finally, defendant argues that the trial court's admission of Kennedy's preliminary examination testimony violated his constitutional right to confront his accuser. We disagree. "Constitutional questions, such as those concerning the right to confront witnesses at trial, are reviewed de novo." See *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

"[T]he Sixth Amendment bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010). Prior testimony, such as that given during a preliminary examination, is testimonial and its admission at trial implicates a defendant's confrontation right. See *People v Bruner*, 501 Mich 220, 229; 912 NW2d 514 (2018). A witness invoking the Fifth Amendment as justification for not testifying at trial is an unavailable witness. See *People v Meredith*, 459 Mich 62, 65-66; 586 NW2d 538 (1998). As to the requirement that defendant had a prior opportunity for cross-examination, " '[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *People v Sardy (On Remand)*, 318 Mich App 558, 564; 899 NW2d 107 (2017), quoting *United States v Owens*, 484 US 554 , 559-560; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks and citation omitted).

In this instance, on the first day of defendant's trial, a colloquy between the trial court and Kennedy ended with the court asking Kennedy if he wished to waive his Fifth Amendment right and testify. Kennedy answered, "No, I do not." Asked by the trial court if he wished to remain silent, Kennedy answered, "Yes." Based on this exchange, the trial court declared Kennedy an unavailable witness and his testimony admissible under MRE 804(b)(1).

Rule 804(b)(1) of the Michigan Rules of Evidence provides that, where a witness is unavailable, the hearsay rule does not exclude testimony given by that witness at an earlier proceeding if the party against whom the testimony is offered had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." [5] Defendant does not

---

discussion or analysis of this being deemed ineffective assistance of counsel, we will address the issue and resolve it on its merits.

[5] Rule 804(b)(1) states in pertinent part:

contest that he had an opportunity to develop testimony by cross-examination of Kennedy. Nor can he. The record shows that defense counsel's lengthy cross-examination of Kennedy at the preliminary examination took up 40 pages of transcript. At issue, however, is whether defendant had a "similar motive" to develop the testimony. Defendant suggests that defense counsel "lacked the motivation" to impeach Kennedy or his credibility at the preliminary examination. Moreover, defendant urges this Court "to recognize a rule that cross-examination conducted at a preliminary hearing does not satisfy the confrontation clause" because the purpose of the preliminary hearing is not to determine guilt or innocence; therefore, defendant did not have a similar motive to develop Kennedy's testimony. We decline to do so.

Among the factors to determine whether a party had a similar motive to examine a witness at the prior proceeding are:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). *People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007).

The purpose of the preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (quotation marks and citation omitted). The prosecution's purpose in presenting Kennedy's testimony at the preliminary examination and at trial was to show that defendant committed the charged crimes. Thus, defendant had an "interest of substantially similar intensity" in proving or disproving Kennedy's testimony at the preliminary examination as he did at trial. *Farquharson*, 274 Mich App at 278. Furthermore, despite the lower burden of proof at a preliminary investigation as compared to trial, defendant had a similar motive to cross-examine Kennedy, i.e., to show that Kennedy could not credibly and reliably testify that he killed Jones with malice during the commission of an armed robbery. See MCL 750.316(1)(b); *Farquharson*, 274 Mich App at 278. Our review of the cross-examination leads us to conclude that counsel vigorously challenged Kennedy's memory, credibility, and prior accounts of the shooting. Because the same issues were at stake in the preliminary examination and the trial, defendant had a similar interest in the issues relative to Kennedy, and defense counsel rigorously cross-examined Kennedy during the preliminary

---

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

examination, we conclude that defendant had both an opportunity and a similar motive to develop Kennedy's testimony by cross-examination. Thus, the requirements of MRE 804(b)(1) and defendant's confrontation right were satisfied.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering