*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC PAUL WILSON,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2021

No. 348750
Genesee Circuit Court
LC No. 18-042749-FC

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317;[1] discharge of a firearm in a building causing death, MCL 750.234b(5); carrying a concealed weapon (CCW), MCL 750.227; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 288 to 480 months' imprisonment for his second-degree murder conviction, 180 to 360 months' imprisonment for his discharging a firearm in a building causing death conviction, 40 to 60 months' imprisonment for his CCW conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

## I. UNDERLYING FACTS

Defendant shot and killed the victim after a dispute about bus passes at the Mass Transportation Authority (MTA) bus station in Flint, Michigan, on December 1, 2017. The shooting was captured on surveillance video, which showed defendant pulling out a gun and firing five times at the victim after the victim pushed defendant out of the building. During a police interview the day after the shooting, defendant admitted to shooting and killing the victim, but asserted that he did so in self-defense.

---

[1] Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), but was convicted of the lesser included offense of second-degree murder.

Before the jury was sworn in for defendant's trial, defendant objected to the composition of the juror venire and argued that it included too few individuals who were African-American. Defendant argued that the composition of the jury pool violated his Sixth Amendment right to be tried by a jury chosen from a fair cross section of his community. Defendant noted that such an argument required him to prove a historical pattern of unreasonable underrepresentation of African-Americans in criminal jury venires in Genesee County, where he was tried. The trial court held an evidentiary hearing regarding the objection and accepted testimony from the Genesee Circuit Court jury board supervisor, Christine Greig. Greig stated that her department did not keep records regarding the racial composition of venires. Defendant asserted that, considering the lack of data, he was being required to prove a fact that could not be proven. The trial court noted the apparent lack of data, but, relying on precedent from our Supreme Court putting the burden on defendant to prove that fact, overruled defendant's objection to the jury pool.

At trial, defendant testified that he saw the victim grab a gun from the waistband of his pants, which precipitated defendant's decision to shoot the victim. The surveillance video shows the victim from behind, so his waistband was not visible. The prosecution, however, elicited testimony at trial from multiple witnesses who knew the victim personally, stated that he was not known to carry a gun, and opined that the victim did not appear to be in an aggressive stance in the surveillance video. The prosecution also introduced testimony from eyewitnesses at the scene of the shooting who stated that the victim did not have a gun that day. As noted, the jury convicted defendant, and this appeal followed.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by failing to instruct the jury regarding voluntary manslaughter as a lesser included offense of first-degree murder. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve an allegation that the trial court failed to provide a necessary jury instruction, the defendant must request that instruction during the trial. *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017). In his brief on appeal, defendant contends that he requested a voluntary-manslaughter instruction and that the request was denied by the trial court. As the prosecution points out, however, a review of the record shows that defendant never requested such an instruction during trial.[2] Thus, this issue is not preserved for our review. See *id*.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court

---

[2] Defendant was actually tried twice. Only issues related to defendant's second trial are at issue on appeal.

proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

## B. LAW AND ANALYSIS

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018) (quotation marks and citation omitted). "One of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "A requested instruction on a lesser included offense is proper if the greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Haynie*, ___ Mich ___, ___; 943 NW2d 383, 383 (2020). Relevant to this case, "[w]hen a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (quotation marks and citation omitted).

Consequently, in this case, we must consider whether a rational view of the evidence would have permitted the jury to find defendant guilty of the lesser included offense of voluntary manslaughter. See *id*. "[T]he elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice." *People v Reese*, 491 Mich 127, 144; 815 NW2d 85 (2012) (quotation marks and citation omitted). "The elements of voluntary manslaughter are: (1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions." *People v McMullan*, 284 Mich App 149, 156; 771 NW2d 810 (2009) (quotation marks and citation omitted), aff'd 488 Mich 922 (2010). As used in the definition of manslaughter the word "provocation" is a term of art: "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason; that is, adequate provocation is that which would cause the reasonable person to lose control." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009) (quotation marks and citation omitted). Thus, "[P]rovocation is not an element of voluntary manslaughter . . . [r]ather, provocation is the circumstance that negates the presence of malice." *Reese*, 491 Mich at 144 (citation omitted), quoting *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003).

And "malice" itself is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v Baskerville*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345403); slip op at 3-4.

The element of voluntary manslaughter most relevant to defendant's argument is whether there was a reasonable view of the evidence under which a jury could have concluded that defendant killed the victim "in the heat of passion." *McMullan*, 284 Mich App at 156 (quotation marks and citation omitted). Stated differently, the trial court was required to give the instruction for voluntary manslaughter as a lesser included offense of first-degree murder only if, in pertinent part, a rational view of the evidence could support the conclusion that defendant shot the victim in the heat of passion. See *Mitchell*, 301 Mich App at 286; *McMullan*, 284 Mich App at 156. During the trial, there was testimony that defendant and the victim were in an argument about defendant selling bus passes in the MTA station. In addition to the verbal dispute between defendant and the victim, defendant and his girlfriend, Aareonna Miller, testified that the victim continuously pushed defendant as he told defendant to leave the building. Despite that testimony potentially supporting a finding of provocation, Miller did not testify regarding defendant's emotional reaction to being pushed or told to leave the bus station. Indeed, Miller stated that defendant was focused on his conversation with Miller, and was mostly ignoring the victim. Other witnesses in the bus station also described the argument between defendant and the victim, and the surveillance video showed defendant shooting the victim after defendant was pushed by the victim. But only defendant provided testimony about his emotional state when he shot the victim. Specifically, defendant provided the following testimony during cross-examination:

> *Q.* It's your testimony [that the victim] was pursuing you outside the MTA?
>
> *A.* He pursued me the whole time.
>
> *Q.* Okay. Isn't it true that as you became upset about him not letting you in the MTA that you lost your temper and you went after [the victim]?
>
> *A.* No. I did not lose my temper because he wouldn't let me in the MTA. I lost my—
>
> *Q.* Isn't it true because you lost your temper, you reached in and grabbed your handgun?
>
> *A.* No. I didn't lose my temper at all. I basically only grabbed my gun to defend. That's the only reason. It was no losing temper.

In light of that testimony, there simply was not adequate evidence to support defendant's contention that a rational view of the evidence would have supported a voluntary-manslaughter conviction. Indeed, in his brief on appeal, defendant has focused his entire argument on whether there was adequate provocation, and does not cite any facts related to whether defendant shot the victim in the heat of passion. This is likely the case because, as noted, none of the testimony admitted at trial would support a finding that defendant acted in the heat of passion. Instead, as is clear from his own testimony, defendant reacted in what he believed to be a logical and discerning

fashion—his life was in danger and he wanted to protect himself. Such a calculated decision, even when in response to allegedly adequate provocation, does not transform defendant's act of shooting the victim into voluntary manslaughter. To the contrary, there must be evidence that defendant acted in the heat of passion as a result of the provocation. As there was no evidence of the killing in this case being the result of defendant acting out of passion rather than reason, the trial court did not err, plainly or otherwise, when it did not give the voluntary-manslaughter instruction. See *Carines*, 460 Mich at 763; *Mitchell*, 301 Mich App at 286; *McMullan*, 284 Mich App at 156.

## III. FAIR CROSS-SECTION OF THE COMMUNITY

Defendant argues that his Sixth Amendment right to trial by a jury chosen from a fair cross-section of the community was violated. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"[T]o properly preserve a challenge to the jury array, a party must raise this issue before the jury is empaneled and sworn." *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003). This issue is preserved, as defendant objected to the venire as not having been drawn from a fair cross-section. See *Id.* "Questions concerning the systemic exclusion of minorities in jury venires are generally reviewed de novo." *Id.*

### B. LAW AND ANALYSIS

"A defendant has the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 428; 884 NW2d 297 (2015), citing US Const Am VI; Const 1963, art 1, § 20; *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). In *Bryant*, 491 Mich at 596-597, our Supreme Court discussed the framework for considering a claimed violation of that right, as set forth in *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979):

> In *Duren*, the United States Supreme Court set forth a more substantive framework designed to evaluate fair-cross-section challenges. Specifically, to make a prima facie case of a violation of the Sixth Amendment's fair-cross-section requirement, a defendant must show:
>
> > (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Our Supreme Court held that, in considering the second prong of the above analysis, "a court must examine the composition of jury pools and venires *over time* using the most reliable data available to determine whether representation is fair and reasonable." *Bryant*, 491 Mich at 599-600.

Initially, it is worth noting that there is no dispute in this case that the first prong of the above-cited test has been met, because "African-Americans, the group alleged to be excluded, are a distinct group in the community for the purposes of determining whether there is a violation of the Sixth Amendment's fair-cross-section requirement." *Id*. at 598. Thus, defendant's primary focus in this appeal is on the second prong of the analysis iterated in *Bryant*. Specifically, defendant believes he has been asked to prove a fact even though no evidence exists to either prove or disprove his contention. The crux of defendant's argument relies on the testimony of Greig, who stated that Genesee County did not keep a record of historical information regarding the racial composition of criminal jury venires. Defendant argues that, without that data, it is impossible to prove that people who are African-American are unreasonably underrepresented in Genesee County jury venires. Defendant is incorrect.

Defendant's argument that no evidence exists to support his juror pool argument ignores important parts of our Supreme Court's opinion in *Bryant*, 491 Mich at 599-600. As discussed, in *Bryant*, the Court held that while a defendant is required to prove a historical pattern of unreasonable underrepresentation in jury venires, the defendant is permitted to rely on "the most reliable data available." *Id*. It stands to reason, certainly, that if Genesee County tracked the racial compilation of its own jury venires, such would be the most reliable source of data on the topic. But just because Genesee County does not track and keep that information does not preclude defendant from raising an argument under the Sixth Amendment and the test discussed in *Bryant*. Instead, defendant is simply required to find "the most reliable data available." *Id*.

Defendant need look no further than the very case he cites, *Bryant*, 491 Mich at 602, to find an instance in which a defendant made a fair-cross-section claim without county records directly on point. The *Bryant* Court stated that, "[i]n this case, hard data regarding the race of those sent questionnaires or appearing for jury service are not available for two primary reasons." *Id*. The two reasons were that (1) information about the race of potential jurors was not included in the information sent to the county by the state, and (2) potential jurors were asked to disclose their race in voluntary surveys, but these surveys "were plagued by wildly inconsistent participation and therefore do not provide a meaningful data set." *Id*. The defendant in *Bryant*, however, discovered that the "court did keep records of the zip code of each person sent a jury summons." *Id*. With that information, the defendant introduced the testimony of an expert in statistics who "was able to estimate, using the racial makeup of each zip code from the census data, the number of African-Americans who had been summoned for jury service from January through March 2002." *Id*. at 602-603.

Based on the reasoning of our Supreme Court in *Bryant*, 491 Mich at 602-603, defendant's argument that he was unable to adduce evidence as to the makeup of the jury pool in Genesee County is without merit; *Bryant* specifically permits a Sixth Amendment fair-cross-section claim to be made on the basis of data or statistics that are not necessarily kept by the governmental entity in question. Defendant has not provided any historical information regarding the race of potential jurors in Genesee Circuit Courts or provided an explanation for why he could not obtain any such information from non-government sources. Instead, based on the record before us it appears that defendant looked only to Genesee County for the records and that he did not make extra efforts, like the defendant in *Bryant* did, to find other sources of evidence to support his jury pool argument.

Although government data did not exist, defendant still had the burden to provide "the most reliable data available." *Id.* at 602. *Bryant* was clear that the second prong of a fair-cross-section analysis "*requires defendant to show* that 'representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community[.]' " *Id.* at 598, quoting *Duren*, 439 US at 364 (alteration in original; emphasis added). Because the law puts the burden of production on defendant, and because defendant did not provide any evidence to carry that burden, defendant's argument regarding a fair-cross-section claim is without merit. *Bryant*, 491 Mich at 598. Moreover, because defendant had other evidence he could have pursued, the record simply does not support defendant's argument that such a burden was impossible to meet, which would be a violation of his due-process rights.[3] Defendant, as the appellant, was required to provide a factual record to support his claim for reversal. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) ("As the appellant . . . , defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated."). His failure to prove that there was *no* evidence available, as opposed to simply the evidence he would prefer to be available, is fatal to this argument on appeal. See *id.*

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant, in his Standard 4 brief, argues that his trial counsel was ineffective for failing to interview a potential exculpatory witness. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To properly preserve a claim of ineffective assistance of counsel, a defendant must move for either a new trial or a *Ginther*[4] hearing in the trial court; failure to make any such motion "ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-

---

[3] Defendant refers to a due-process right of fundamental fairness, but he failed to cite a single case regarding such a right or to provide any analysis regarding the issue. Instead, defendant's brief argues only a fair-cross-section claim under the Sixth Amendment and *Bryant*. Thus, to the extent he has attempted to make a due-process argument, it has been abandoned by his failure to brief it. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). Even so, as discussed in the analysis for this issue, defendant's due-process argument is clearly founded upon a misunderstanding of the law. It was not fundamentally unfair to defendant that Genesee County did not keep historical records of the racial composition of jury venires because defendant was permitted to support his fair-cross-section claim by using other evidence. See *Bryant*, 491 Mich at 602-603.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

659; 620 NW2d 19 (2000). It is undisputed that defendant never moved the trial court for a new trial or for a *Ginther* hearing.[5] Thus, the issue is unpreserved.

Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther* hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

## B. LAW AND ANALYSIS

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012).

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defense counsel may decide, for example, "not to object to an obvious error" for "strategic reasons." *Randolph*, 502 Mich at 12. Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy." *Unger*, 278 Mich App at 242-243.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

---

[5] Indeed, no *Ginther* hearing was held in this case.

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [*Strickland*, 466 US at 689 (citation omitted).]

"Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

Furthermore, with regard to prejudice, as noted, to obtain a new trial on ineffective assistance grounds, a defendant must show that "there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). (quotation marks and citation omitted). To meet this standard, a defendant does not have to show that the evidence would have ensured acquittal, *id*., nor is a defendant even required to show that counsel's failure more likely than not altered the outcome, *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id*. "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56.

As noted, defendant argues that defense counsel should have called a witness who may have seen the shooting occur. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (quotation marks and citation omitted).

The basis of defendant's argument relies partially on defense counsel's cross-examination of Flint Police Sergeant William Jennings, the officer-in-charge of the case. In pertinent part, Sergeant Jennings testified that, when police officers were at the scene of the crime, they were approached by a woman who said she witnessed the shooting. Sergeant Jennings testified that the woman provided contact information and said she would be willing to speak with the police. However, considering the number of eyewitnesses and that the shooting was recorded on video, Sergeant Jennings determined it was unnecessary to speak with the woman. Defense counsel pressed the issue with Sergeant Jennings, suggesting that the police investigation was tainted by Sergeant Jennings's failure to seek out any and all witnesses of the crime.

On appeal, defendant contends that defense counsel should have done more than just question the integrity of the police investigation, and instead, should have found the witness and called her to testify. In order to establish that his trial counsel was ineffective, defendant must establish that his trial counsel's "performance was below an objective standard of reasonableness under prevailing professional norms." *Lockett*, 295 Mich App at 187. As a rule, defendant is

required to provide the factual predicate for a claim of ineffective assistance of counsel. See *Hoag*, 460 Mich at 6. Defendant has failed to meet that standard in this case. Defendant has not provided any evidence even suggesting what the testimony of the witness in question would have been. Indeed, other than his own conjecture on the subject, the record lacks any evidence that the witness's testimony would have been any different than that of any of the other witnesses who actually did testify at trial. In short, there was no evidence that the witness's testimony would have been beneficial to defendant's case. Because it is unpreserved, our review of the issue is limited to mistakes apparent on the record, and, there being no such apparent mistakes, defendant's argument lacks merit. See *Wilson*, 242 Mich App at 352. Moreover, we must proceed on the presumption that defense counsel's decision not to call the witness was sound trial strategy, and defendant has not provided any evidence to overcome it. See *Unger*, 278 Mich App at 242-243. Instead, the record shows that defense counsel's apparent belief that it was more beneficial to undermine the police investigation of the crime in an attempt to create reasonable doubt, rather than to call a witness who might have provided additional damaging testimony, such as that the victim did not have a gun, was sound trial strategy. See *id*.

On an alternative basis, defendant appears to argue that this Court should find defense counsel ineffective for failing to move for a *Ginther* hearing on this issue. Defendant suggests that, during such a hearing, he could have produced evidence of the witness's possible testimony. A *Ginther* hearing is a method by which "[a] defendant who wishes to advance claims that depend on matters not of record can properly . . . seek at the trial court level an evidentiary hearing for the purpose of establishing his claims." *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). A trial court's decision whether to grant an evidentiary hearing, such as a *Ginther* hearing, is reviewed for an abuse of discretion. *Unger*, 278 Mich App at 216-217. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217. A *Ginther* hearing is not warranted if the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective." See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Once again, defendant was required to present some evidence of "any additional facts" that would show a *Ginther* hearing was warranted. See *id*. At a minimum, defendant was required to make an offer of proof as to what the evidence would have shown. See MRE 103(a)(2). As with his previous argument, defendant has failed to carry his burden. Instead, defendant relies on his own conjecture that the testimony of the witness would have been beneficial to his case. Considering the utter lack of evidence on the topic, or any basis for concluding what the witness's testimony might have been, the trial court would have been obligated to deny a request by defense counsel for a *Ginther* hearing to produce the witness. In other words, absent an affidavit from the witness or some statement made by her, the trial court had no evidence that would warrant an evidentiary hearing on the issue. *Id*. Because the motion for a *Ginther* hearing on that ground properly would have been denied, and because "[i]neffective assistance of counsel cannot be

predicated on the failure to make a frivolous or meritless motion," this alternative argument by defendant also lacks merit. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).[6]

## V. SUFFICIENCY OF THE EVIDENCE

Defendant, in his Standard 4 brief, argues that there was insufficient evidence to sustain his conviction of second-degree murder. We disagree.

## A. STANDARD OF REVIEW

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of the evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992) (citation and quotation marks omitted). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citations omitted). Similarly, "[c]ircumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Finally, "[d]ue process requires the prosecution in a criminal case to introduce sufficient evidence to justify a trier of fact in its conclusion that the defendant is guilty beyond a reasonable doubt." *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998). As such, a conviction based on insufficient evidence violates due process. See *id*.

---

[6] The prosecution interpreted defendant's admittedly confusing alternative argument in his Standard 4 brief as a claim of ineffective assistance of *appellate* counsel. While we have read the argument differently, the outcome of the analysis would be the same—absent any evidence of the witness's potential testimony, a motion to remand the case for a *Ginther* hearing lacked merit. See *Williams*, 275 Mich App at 200. Thus, appellate counsel was not ineffective for failing to move for a remand for a *Ginther* hearing because any such request could not have succeeded, for the reasons discussed earlier. See *Riley*, 468 Mich at 142; *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008) ("[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel.").

## B. LAW AND ANALYSIS

First, we must address that defendant's argument appears to rely on a misstatement of the record. In pertinent part, defendant claims that Julissa Townsend, who was at the MTA bus station on the night of the shooting, took the victim's cell phone from the scene of the crime, which defendant suggests amounted to a criminal offense. Defendant states that Townsend should have been convicted of tampering with evidence. Defendant is correct that Townsend testified that she took the victim's cell phone from near his body after he was shot. She then used that cell phone to call 911. But, later during her testimony, Townsend clarified that she gave the cell phone to the victim's sister, who then gave the cell phone to police. Thus, to the extent that defendant's argument relies on an allegation that the victim's cell phone was never provided to the police, it is not supported by the record, and thus, is without merit.

Additionally, defendant has not suggested how removal of the cell phone from the scene of the shooting affected the sufficiency of the evidence that he committed second-degree murder. Nevertheless, a review of the elements of a claim of second-degree murder, the evidence in the case, and defendant's claim of self-defense demonstrates that there was sufficient evidence to sustain defendant's conviction. In a recent decision, *People v Baskerville*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345403); slip op at 3-4, this Court stated the elements of second-degree murder:

> The elements of second-degree murder are (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. Second-degree murder evolved from common-law murder, under which malice aforethought was understood for centuries to be the grand criterion distinguishing murder from less wicked homicides. [Citations and quotation marks omitted.]

Although defendant has not identified the specific element or elements at issue on appeal, because he testified that he shot and killed the victim, it is clear that there was sufficient evidence that "a death" occurred, and that "the death was caused by an act of . . . defendant." *Id*. at ___; slip op at 3 (citation and quotation marks omitted).

As to the remaining two elements, there was sufficient evidence to support a conclusion that " 'defendant acted with malice, and . . . defendant did not have lawful justification or excuse for causing the death.' " *Id*. Recall that "malice" is fulfilled by "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (quotation marks and citation omitted); see generally Section II(B) of this opinion. Defendant admitted that he used a handgun to shoot the victim three times. Indeed, defendant shot the gun five times in the victim's direction. The bullets were aimed at the victim's chest and two of the bullets actually pierced the victim's chest cavity and his lungs. From that evidence, the jury had more than sufficient grounds to infer that defendant intended to kill the victim, or at the very least, to cause the victim great bodily harm. *Id*. at ___; slip op at 3-4.

In light of that evidence, it is apparent that defendant's argument related to sufficiency of the evidence is focused on the fourth and final element of second-degree murder—whether defendant had a lawful justification for the shooting. *Id.* Defendant's argument during the trial was that he acted in self-defense. "With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq.*, the Legislature codified the circumstances in which a person may use deadly force in self-defense . . . without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). In relevant part, MCL 780.972(1)(a) states that

> [a]n individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . [t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself . . . .

"Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).

Defendant testified that after the victim pushed him near the MTA station exit, the victim lifted up his shirt and reached for a gun that was in the waistband of his pants. Upon seeing that action, defendant believed his life was in danger, pulled out his own gun, and shot the victim. While that testimony from defendant supported his allegation of self-defense, as did testimony regarding the victim yelling at defendant and pushing him, there also was significant evidence that defendant did not "honestly and reasonably believe[] that the use of deadly force [was] necessary to prevent [his] imminent death." MCL 780.972(1)(a). Specifically, no one else at the bus stop saw the victim with a gun. The victim's mother testified that the victim never carried a gun and that he did not have one the day he was killed. Other witnesses who knew the victim agreed that the victim did not have a gun on the day of the shooting. Moreover, Vernon Beasley, who did not know the victim personally and who closely examined the victim's body while rendering first aid to him soon after he was shot, testified that the victim did not have a gun on his person or around his body. Beasley stated that he ripped off the victim's shirt, so the victim's waistband would have been visible and he would have seen any gun in the victim's waistband. Lastly, several witnesses who knew the victim personally testified that his posture in the surveillance video was not indicative of aggressiveness.

Giving defendant's confusing brief the benefit of the doubt, he appears to be attempting to bring all of this testimony into doubt by suggesting that someone around the victim's body likely removed the victim's gun from the scene. His reasoning is that, if someone could remove a cell phone from the vicinity of the victim, then someone also could have removed a gun. While that is undoubtedly possible, the jury considered that possibility and disbelieved it. Instead, the jury credited the many witnesses who described the victim as not having a gun on the day in question, and thus, found that defendant was not reasonably in fear of his life when he killed the victim. That was the province of the jury, and we will not interfere with that conclusion. See *Oros*, 502 Mich at 239. At best, defendant has presented us with a factual dispute about whether the victim had a gun, reached for it, and defendant shot him because defendant feared for his life. On appeal,

we must construe the evidence in the light most favorable to the prosecution, which supports the verdict. See *Herndon*, 246 Mich App at 415. In sum, because there was sufficient evidence for a rational juror to believe beyond a reasonable doubt that defendant did not act in self-defense when he shot and killed the victim, there was sufficient evidence to support defendant's conviction of second-degree murder. *See Stevens*, 306 Mich App at 630.

## VI. CONCLUSION

We find no prejudicial error regarding defendant's convictions. For the reasons stated, therefore, defendant's convictions are affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel